Good morning, your honors. May it please the court. My name is Harini Ragupathy from the Federal Defenders of San Diego on behalf of the appellant Mr. Jesus Medina-Castro. The district court violated Mr. Medina's right to due process when it sentenced him as a knowing drug trafficker based only on unreasonable inferences and speculation, and when it improperly shifted the burden to him to disabuse it of its skepticism. Because, as the government concedes, the district court's skepticism was the sole demonstrable basis for the upward variance, this court should vacate Mr. Medina's sentence and remand to a different district court judge for resentencing. In United States v. Saperstein, this court held that unfounded assumptions and groundless inferences, even if based upon proper and accurate information, may not, consistent with due process, form the basis of a sentence. And the court went on to define an inference as unreasonable where, quote, the record and report could support inferences of other activities, legal or illegal, as readily as they support an inference of trafficking and narcotics, end quote. And here the district court violated this rule in treating Mr. Medina as a knowing drug trafficker. And in doubling his sentence on this ground, the district court made unreasonable inferences that weren't supported by the totality of undisputed evidence in the record. Saperstein was a currency smuggling case also, wasn't it? Correct. But there were no drugs in that case. It was $157,000 in cash being smuggled into the country by a young doctor. In this case, we have a lot of drugs. Is that distinction important? I don't believe so, Your Honor. That is a factual distinction, but I think in terms of the inference that the district court made here, the mere presence of the drugs in light of the totality of the other undisputed evidence was insufficient to warrant an inference of knowledge in this case. And there are eight pieces of undisputed evidence that I think are critical in this case. The first is Mr. Medina's consistent and emphatic denial of knowing about the drugs, first at his post-arrest statement, pre-sentence interview, and then again during the allocution. There's the e-mail exchange that Mr. Medina sent to his employer showing that he knowingly agreed to smuggle drugs. And the prosecutor below found this evidence to be very compelling and said this is the most powerful factor in this case. You said knowingly agreed to smuggle drugs. I think you meant to say currency. I apologize. Currency, didn't you? Yes. All right. He knowingly agreed to smuggle cash. And the prosecutor below really emphasized the persuasiveness of this evidence. And this evidence set aside Mr. Medina's case from other cases in the Southern District of California. And then there was discovery from the government that as of 2012, the very year that Mr. Medina was arrested, that drug trafficking organizations in the Baja California border region were using ads placed in Mexican publications to recruit unknowing couriers under the guise of nondrug-related employment. Four, there was evidence of nine other cases in the Southern District where individuals that were initially charged with importing drugs, including methamphetamine, which was the narcotic at issue here, were then ultimately convicted of bulk cash smuggling, which showed that this was something that was occurring in the Southern District at this time. Mr. Medina had no crossing history for the year preceding his arrest. And there was an argument that if he really were a trusted drug courier, that he would have had to build up trust with the organization by making multiple trips across the border. So I think these are some of the pieces of undisputed evidence before the district court that showed Mr. Medina knowingly trafficked in drugs, or excuse me, in cash, but that he did not knowingly traffic in drugs. And so while the district court may have had a hunch to the contrary that Mr. Medina knew about the drugs, ultimately its strong feelings were not supported in the materials that it had before it. And then I think the district court compounded this error when it then improperly placed the burden on Mr. Medina to disabuse it of its skepticism. The court, the government claims that the disabuse comment came solely in the context of the lie detector test, but even granting that the district court didn't consider evidence of the lie detector test, there was still burden shifting at play here because the district court started with a presumption, a foundational presumption that Mr. Medina knew about the drugs. And the only way for him to be treated as a knowing cash smuggler, the crime with which he was convicted, as opposed to a knowing drug smuggler, was for him to marshal evidence to the contrary and convince the court otherwise. And I think one quote from the district court is particularly telling. Upon setting aside the polygraph evidence, the court said that, quote, and then we're back to square one, ellipses, I don't believe his story. And so as in Safferstein and Weston, Mr. Medina had no duty to refute the district court's characterization of him as a knowing drug trafficker, and this was error and a due process violation. I'd like to reserve the remainder of my time, if that's all right. I just want to ask you one question before that. If you run out of time, then Judge Pankerson, I'm sure, will indulge you for a few minutes. If it weren't for the fact that there was this e-mail evidence and the district court here relied on his own experience, you're dealing with a pretty experienced judge who sits close to the border, has seen, I'm sure, lots and lots of these cases. Would that be different if you didn't have the kind of evidence that essentially corroborated his lack of knowledge? I think the e-mail evidence is critical in this case, and that is something that the prosecutor below pointed out, that, you know, a lot of times the government may hear stories from criminal defendants that they responded to an ad, but here you had actual concrete evidence of Mr. Medina responding to the ad, initiating contact of his own accord, and then there's the content of the e-mail, which shows that he's knowingly agreeing to smuggle cash. So I do think that that evidence is very important in this case, and the government noted that repeatedly below in trying to convince the district court to not only follow the charge bargain, but also to honor the party's joint recommendation of 12 months. Thank you. Thank you. May it please the Court, Benjamin Hawley for the United States. District courts are given wide latitude in the facts that they may consider and substantial deference in the inferences they draw from those facts, and that's because, as this Court has held consistently, district courts are in the best position to make factual findings, to make credibility determinations, and then to draw inferences from those findings and from those determinations, and that's what happened here. The district court was trying to consider all of the evidence it had before it. It certainly considered the pre-sentence report, the arguments from counsel, and it simply didn't find Mr. Medina's arguments persuasive. It didn't find his story credible. That's exactly what we want a district court to consider is all of those facts and reach its determinations. Would you agree with your opponent that the main distinction between this case and Saperstein is that there was the presence of a relatively substantial amount of methamphetamine in the defendant's car? That's certainly, I would say, the primary distinction. Even absent that, I think there are more facts here than there were in Saperstein. Doesn't affirming the district court require us to hold that as a matter of law, it is a legitimate presumption that someone who carries narcotics is presumed to know that he's carrying narcotics because of the theory that why else would a drug smuggling organization entrust him with the narcotics? I don't think it's, this Court would necessarily pass on, would need to go that far. But how wouldn't we? Because there isn't any other evidence in the record that I saw that would support a finding of knowledge. And there's a, this is maybe a little colloquial, but there's a sort of, oh, come on. You know, the theory at work here, and I've read the government's authorities, and I've not, I don't believe that this Court has ever clearly held that there is such a presumption in the law. So explain to me why we don't need to reach that question. I don't think the Court would need to say that that presumption necessarily is always correct or that a court would have to make that presumption. What I think instead is that the district court, considering all of the evidence, not purely just the drugs, may reach that presumption. Here it wasn't, the district court certainly put a lot of emphasis on the fact of the drugs, but it wasn't solely that. One, it was the quantity, and therefore the value of the drugs. The cases that you cite on this point have to do with the admissibility of expert testimony on drug courier profiles, correct? Yes. But there wasn't any expert testimony in this case. No, and those cases I'm not arguing are immediately on point. So it's something sort of akin to judicial notice. I think it's more the judicial fact finding for the district court, that the district court has to consider what all of the facts are. Certainly a large value or large quantity and therefore value of methamphetamine is an important fact to consider, but it wasn't the only fact that the district court was considering here. The district court also pointed out the statement about a bad feeling. It pointed out all of the dealings with this car, getting it registered in his name, just three days before this crossing, and it pointed to that this organization or these people he was corresponding with clearly were up to some type of illegal activity and that Mr. Medina knew that. He knew that he was signing up to bring, according to his story, at least $10,000 back to the United States, and that this organization therefore was looking to violate the law in at least some way. So any one of those facts by itself might not be sufficient, might not fully distinguish this case from Saperstein, but the court has to consider, both the district court and therefore this court, has to consider all of those facts in their totality, and considering them in their totality, there was enough, I believe, for the district court to at least have a plausible inference that he did more likely than not know about the drugs in his car. Did the district court ever make any comments regarding the e-mail, which the government thought was pretty key to offering him what appears to be a very unusual deal for that district? You know, you're in a little bit of a tough spot here on the Hill because it's not every day that you see a prosecutor here, a prosecutor of 20 years' experience, hasn't seen anything like this, and the force of the exculpatory value of those e-mails was enough for this highly experienced prosecutor to say, hey, I think that there's affirmative evidence. He didn't realize that he was actually smuggling narcotics. He was suckered into, undoubtedly, illegal activity, but he thought legitimately, or at least we can't prove that his story, that he was suckered into transporting cash, is false, and so therefore we're going to give him this deal. And so when it comes time to sentencing, I appreciate the fact that the district judge has a wide attitude in sentencing, and our review has to be pretty deferential,  to give him this, in the government's view, fantastic deal, and how did the district court address that? He talked about all the other types of evidence and his inferences and the value in his experience, but I didn't see any effective response to the e-mails. The district court did address that, and that was in the third sentencing hearing where he was specifically asking, how do you, because in the first two sentencing hearings he was saying, I just reject this, not out of hand, but from the front, he did say during that third sentencing hearing, now I understand because it's a difference of standards. The government has to prove beyond a reasonable doubt about the drugs, and the district court was saying, I don't have that same standard, which is accurate. It was just merely more likely than not. And he agreed, Judge Burns did, that this is not a situation beyond a reasonable doubt, and that's what the prosecutor kept talking about. I don't want to try to make a closing argument while these e-mails are on the screen behind me. And so Judge Burns said, I understand that. That at least makes sense now. It was why then he said, okay, I'll accept the guidelines calculations that the parties are recommending here. The difference then, though, is you step back on that standard of proof for sentencing facts, and the court did find that it was more likely than not that Mr. Medina did know about those drugs. And, of course, this court has yet a different standard of review, and that's merely the abuse of discretion, whether that call was correct, whether those inferences were at least plausible, not whether this court would make those same findings itself. I know that. But saying that the standard of proof is different isn't the same as dealing with the exculpatory value of the e-mails. I agree, though. I think the court was perhaps implicitly doing so in saying that it's exculpatory to the extent it doesn't therefore have a beyond a reasonable doubt level of proof. It's exculpatory enough that it wouldn't be there. However, the district court, even considering all that information, which, of course, defense counsel was bringing up time and again, so it was certainly before the district court, the court still thought the story just did not ring true, given all the evidence and the totality, and therefore he should sentence him believing that he did know that the drugs were there. Even if this court were to disagree with the government and remand back to the district court, we believe it should go back to the same district judge, or at least it's not one of those unusual cases that needs to go to a different judge. Tellingly, in both Saperstein and the other case the defense cited in its subsequent letter, Solirio-Ramirez, this court remanded back to the same district judge. In Saperstein, the district judge was making the same type of credibility determinations that they're arguing Judge Burns made here and was obviously reversed for finding that those determinations and those inferences were an abuse of discretion, yet they still remanded back to the same district judge. So if this court were to get to that step, we don't believe it constitutes an unusual circumstance justifying remanding to a different court. Thank you. Thank you. Thank you. Just a few points, Your Honors. Regarding the testimony about the unlikelihood of unknown couriers, as Judge Tiger, you pointed out, there was no evidence introduced on this record about that, and I think that was because the government made a strategic decision that such evidence would be unfitting on the particular facts of Mr. Medina's case. And then more importantly, the district court's reliance on that sort of expert testimony from other cases was contradicted by the evidence in the record, the discovery from the government that there were these types of unknowing drug smugglers and that type of modus operandi was occurring in 2012 in the Baja California border region. Is it the defendant's argument this morning that the only evidence on this point pointed the other way? That is correct, Your Honor. And then lastly, just quickly touching on the point of reassignment, it is true, as my colleague suggests, that neither Salerio Ramirez nor Saperstein remanded to a different district court judge, but it's unclear from those cases whether that was an instruction that was requested or not by the defendant, and so there can't be authority for something that was never raised below. And we think that reassignment would be appropriate in this case. It's an unusual circumstance. Because of the sheer number of times Judge Burns made his disbelief of Mr. Medina apparent on the record, because some of the unusual measures that he took to attempt to corroborate his viewpoint, such as suggesting a lie detector test, conducting his own independent research, and for those reasons, we would ask that the court respectfully vacate the sentence and remand to a different district court judge. Thank you. Thank you.
judges: Tigar, Pregerson, Nguyen